IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 12-cv-00291-LTB-MEH

GARY ADLER,

       Plaintiff,

v.

AMERICAN HOME MORTGAGE SERVICING, INC.,

       Defendant.
_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

This matter is before me on two motions by American Home Mortgage Servicing, Inc. ("American"). The first is its Motion to Dismiss Plaintiff Gary Adler's original complaint **[Doc # 7]**. The second is its Motion to Dismiss Adler's Amended Complaint **[Doc #24]**. Jurisdiction is proper under 28 U.S.C. § 1331. After considering the parties' arguments, and for the reasons herein, I DENY the first motion as moot and GRANT the second.

**I. Background**

This case concerns alleged discrimination in connection with the servicing of a residential mortgage. Adler alleges the following in his amended complaint:

Adler is a Colorado citizen who is visually impaired. He was declared legally blind in 1993 and is considered handicapped under pertinent law. American is a Delaware corporation with its principal place of business in Irving, Texas. American, through its participation in certain federal programs, received federal funding for making loan modifications.

In February 2003, Adler purchased a home in Castle Rock, Colorado, taking out a mortgage for $279,903 to do so. Six years later, in 2009, his mortgage was sold to American for servicing.

In or around 2009, Adler requested that American issue all its correspondence to him in 24-point bold font due to his visual impairment. This accommodation was necessary for Adler to read the documents American would send regarding his mortgage. American refused and continued issuing all its correspondence to him in its standard type. Because he could not read the correspondence, Adler says he did not understand his rights and duties and was injured as a result.

That same year, Adler resubmitted his request to American in connection with his applications for a mortgage modification pursuant to the Home Affordable Modification Program ("HAMP"), a program enacted under the Emergency Economic Stabilization Act of 2008 and made part of the Making Home Affordable Program, enacted by the Financial Stability Act of 2009. American again refused. As a result, Adler says he could not read the materials pertaining to his HAMP applications, although he did submit multiple applications. His applications were ultimately denied. Similarly, due to its typeface, font, and colors, Adler also says he could not read American's website to access forms and other information regarding his mortgage. In 2011, Adler's home was foreclosed.

Feeling aggrieved, Adler commenced this action on February 3, 2011, bringing claims under the Fair Housing Act (the "FHA"), 42 U.S.C. § 3601 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181 *et seq*. American then filed its first motion to dismiss Adler's original complaint. *See* Docket #7. In response, Adler moved for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a). *See* Pl.'s Mot. Docket # 17. I granted Adler's motion and accepted his first amended complaint

tendered therewith.  *See* Docket # 18. Consequently, I deny American's first motion as moot. American now moves pursuant to Fed. R. Civ. P 12(b)(6) to dismiss the first amended complaint.

## II. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).  "Plausibility" in this context "refer[s] to the scope of allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted).  As a corollary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 at U.S. at 678.  Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555.  When deciding a motion to dismiss under Rule12(b)(6), the court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff.  *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).  Legal conclusions, however, do not receive this treatment.  *Iqbal*, 556 U.S. at 678.

## III. Discussion

American's second motion asserts that each of Adler's three causes of action fails to state a plausible claim for which relief can be granted. I address his claims *seriatim*.

### *A. The FHA Claim*

Adler's first claim is that American violated the FHA by failing to send its correspondence to him in the larger, bolded typeface he requested. Adler's complaint does not specify a particular FHA provision upon which his first claim rests, but his response elucidates that the claim rests upon § 3604(f)(2). *See* Pl.'s Resp. Docket # 25 at 8 ("Plaintiff is not complaining of a real estate transaction as contemplated by § 3605. . . but of a service provided in connection with his dwelling. . . . The actual servicing of loans does not fall under the ambit of § 3605 but rather § 3604."). I therefore cabin my analysis to whether Adler states a claim under that provision.

Section 3604(f)(2) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person; or a person residing in . . . that dwelling after it is so sold . . . ." American contends that Adler fails to state a claim because § 3604 does not cover mortgage servicing and because the alleged discrimination was not in connection with the purchase of Adler's home. Adler disagrees. He argues that mortgaging servicing is a "service" within the meaning of § 3604 and that discrimination need not relate to the sale of his home, but rather, to his home in general. Hence, I must address these two issues, beginning with whether American was providing a "service" under § 3604. For the reasons below, I conclude that Adler fails to sufficiently allege that American was providing him a service as contemplated by § 3604(f)(2). I therefore need not and do not decide whether the provision of services must be "in connection with" the purchase of Adler's home or with his home in general.

Adler fails to establish that by the statute's plain language, "services" includes mortgage servicing. He does not even attempt to do so, for good reason. The statute does not define

4

"services," and the provision's drafting leaves the term ambiguous. *See N.A.A.C.P. v. American Family Mut. Ins. Co.*, 978 F.2d 287, 298 (7th Cir. 1992); *see also* 42 U.S.C. § 3604. Nor does the term "loan" or "mortgage" appear in § 3604. *See* 42 U.S.C. § 3604.

Compare this to the next section: Section 3605 makes it "unlawful for any person or other entity *whose business includes engaging in residential real estate-related transactions* to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of . . . handicap." 42 U.S.C. § 3605(a) (emphasis added). "Residential real estate transactions" means "[t]he making or purchasing of loans or providing other financial assistance-- **(A)** for purchasing, constructing, improving, repairing, or maintaining a dwelling; or **(B)** secured by residential real estate." *Id.* § 3605(b)(1).

The regulations promulgated by the Department of Housing and Urban Development ("HUD") to effectuate the FHA mirror this contrast and apparent allocation of coverage. *Compare* 24 C.F.R. §§ 100.50-.90, .200-205 (providing HUD's interpretation of conduct that is unlawful housing discrimination under § 3604 and not mentioning mortgage loans), *with* 24 C.F.R. §§ 100.110-.148 (providing HUD's interpretation of the conduct that is unlawful housing discrimination under § 3605, and making numerous explicit references to loans and mortgages). "HUD's views about the meaning of the FHA are entitled to 'great weight.' " *Block v. Frischolz*, 587 F.3d 771, 781 (7th Cir. 2009) (quoting *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210 (1972)). Furthermore, § 100.70(b) and (d) indicates that HUD interprets "services" in § 3604 to mean municipal services and property and hazard insurance for dwellings. *See* 24 C.F.R. § 100.70(b), (d).

While the Tenth Circuit has not addressed whether § 3604 covers claims of discrimination in mortgage matters, some courts have held that the plain language of §§ 3604 and 3605 and their

corresponding regulations shows that such a claim must be brought under § 3605. *See, e.g.*, *Webster Bank. v. Oakley*, 830 A.2d 139, 151-52, 155 (Conn. 2003) ("[W]e conclude that the defendant's claims of discrimination in the enforcement of mortgage loan agreements unambiguously falls within the ambit of 42 U.S.C. § 3605. . . . Indeed, we conclude further that the specific applicability of § 3605 to the context of enforcement of mortgage loan agreements precludes the application of § 3604 in the same arena. . . . Thus, this interpretive treatment by [HUD] . . . confirms that 42 U.S.C. § 3605 is the sole FHAA provision applicable to mortgage servicing and enforcement. We, therefore, disagree with the defendant's claim that mortgage servicing and enforcement "otherwise make [s] unavailable or den[ies]" a dwelling or is a "[service]" in connection with a dwelling for purposes of 42 U.S.C. § 3604(f)(1) and (2)."); *Gaona v. Town & Country Credit*, 324 F.3d 1050, 1057 n.7 (8th Cir. 2003) (noting that § 3604 "bars discrimination in sales and rentals, rather than loans"); *Eva v. Midwest Nat'l Mortgage Bank, Inc.*, 143 F.Supp.2d 862, 886 (N.D. Ohio 2011) ("§ 3604 relates to acquiring a home, while § 3605 applies to the making or purchasing of loans or providing other financial assistance for maintaining a dwelling previously acquired."); *but see Clifton Terrace Associates, Ltd. v. United Technologies Corp., et al.*, 929 F.2d 714 (D.C. Cir. 1991); *Beard v. Worldwide Mortgage Corp.*, 354 F.Supp.2d 789, 809 (W.D. Tenn. 2005); *Nat'l Cmty. Reinvestment Coal. v. Novastar Fin., Inc.*, 2008 WL 977351, *2-3 (D. D.C. March 31, 2008) (unpublished); *and Jones v. Office of Comptroller of Currency*, 983 F.Supp. 197 (D. D.C. 1997).

To be clear, I do not decide whether claims of discrimination in mortgage matters must be brought under § 3605 or whether that section also covers mortgage servicing. The discussion above simply shows how Adler fails to demonstrate that mortgage servicing is a "service" under the plain language of the statute he cites as the basis for his claim, § 3604, or its corresponding regulations.

Adler also fails to provide any case law construing "services" in § 3604 to include mortgage servicing–nor is the Court aware of any. Instead, he attempts to persuade me to strike new ground and conclude that "services" encompasses or should encompass mortgage servicing. To do so, Adler cites cases in which mortgage financing or refinancing was deemed a "service." He then conclusorily asserts that it follows from these cases that mortgage servicing should be as well. For numerous reasons, this is unavailing. The cases he cites are not controlling. *See Clifton Terrace*, 929 F.2d 714; *Beard*, 354 F.Supp.2d 789; *Nat'l Cmty.*, 2008 WL 977351, *2-3; *and Jones*, 983 F.Supp. 197. They are also factually distinguishable because of the patent and important differences between servicing and financing a mortgage, distinctions to which the cases themselves allude. Moreover, as expounded *infra*, these cases inherently limit their holdings to financing and refinancing, rendering Adler's attempt to broaden them to include servicing untenable.

Adler cites *Clifton Terrace,* 929 F.2d 714, for its dicta that mortgage financing is an "essential service." 929 F.2d at 720. Context helps understand why Adler's reliance is misplaced:

> Clifton notes that the Department of Housing and Urban Development ("HUD") has recently promulgated regulations that interpret [§§ 3604(a) and (f)(1)] to prohibit "any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons." 24 C.F.R. §100.70(b) (1990). This proscription includes "[r]efusing to provide municipal services or property or hazard insurance for dwellings or providing such services or insurance" discriminatorily. *Id.* §100.70(d)(4). Although the denial of certain essential services relating to a dwelling, such as mortgage financing, sewer hookups, zoning approval, or basic utilities, might result in the denial of housing, this interpretation by HUD does not extend the reach of 804(a) and (f)(1) to questions of habitability.
>
> On the other hand, the pertinent clauses in subsections (b) and (f)(2), which do address habitability, are limited to services and facilities provided in connection with the sale or rental of housing. 42 U.S.C. § 3604(b), (f)(2). These subsections are directed at those who provide housing and then discriminate in the provision of attendant services or facilities, or those who otherwise control the provision of housing services and facilities.

*Id.* This quote shows that when the court referred to mortgage financing as an "essential service," it was in the context of § 3604(a) and (f)(1), not § 3604(f)(2), and it explicitly stated that its characterization does not extend to questions of habitability, the province of § 3604. Whether the court in *Clifton Terrace* considers mortgage financing a service under § 3604(f)(2) is thus opaque. Additionally, its discussion of § 3604(f)(2) corrodes Adler's argument that American was providing a service because Adler does not allege that American provided his housing or that it monopolizes the provision of mortgage servicing. *See id.* Absent both of those, according to *Clifton Terrace*, § 3604(f)(2) does not apply. For these reasons, the court determined that an elevator manufacturer was not a provider of "services" under § 3604. *Id.*

Adler anchoring his argument to *Beard*, 354 F.Supp.2d 789, also proves unsound. There, the court concluded that § 3604's "services" was broad enough to encompass home improvement loans and refinancing loans "because the burden of the debt affects individuals ability to buy or sell a dwelling." *Id.* at 809. Here, American bought and serviced Adler's mortgage six years after Adler took out his mortgage and purchased his home. Adler does not allege how the simple act of American servicing his mortgage affected his ability to buy or sell a dwelling when he had already incurred the "burden" wrought by the mortgage six years before.

*National Community*, 2008 WL 977351, *2-3, is no different. The court there indeed held that § 3604 applies to mortgage financing because discrimination in lending can making housing unavailable–that is, inaccessible–and one of the purposes of the FHA is to "discourage discrimination in access to housing." *See id*. Adler, however, does not allege how American's mortgage servicing denied him access to housing.

8

Lastly, *Jones*, 983 F.Supp. 197, also undermines Adler's ultimate argument. After citing a litany of cases "fairly liberl[ly] interpreting the reach of [s]ection 3604," the court stated that "[i]n [them], however, the entity sued for alleged discrimination was an actor directly involved in providing housing or providing services, like homeowner's insurance or financing, *that are directly connected to helping people acquire housing.*" *Id.* at 202. Adler does not allege that American helped him acquire his home.

Additionally, I note that other circuits have construed "services" in such a way so as to exclude mortgage matters altogether. For example, the Fourth Circuit has repeatedly held that "services" as it is used in the FHA "encompasses such things as garbage collection and other services of the kind usually provided by municipalities. . ." *Mackey v. Nationwide Ins. Companies*, 724 F.2d 419, 424 (4th Cir. 1984) (concluding that hazard insurance is not a "service"); *accord A Society Without a Name v. Virginia*, 655 F.3d 342, 349-50 (4th Cir. 2011) ("Intake services to sign up for a homeless shelter are simply not within the type of services covered by the FHA because they are unlike services generally provided by governmental units such as police and fire protection or garbage collection.") (internal quotations omitted); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 193 (4th Cir. 1999) (a proposed roadway is not a "service"). It has further stated that the "FHA's services provision . . . does not extent to every activity having a conceivable effect on neighborhood residents." *Jersey Heights*, 174 F.3d at 193. The Seventh Circuit has reached a similar conclusion, holding that "services" as used in § 3604 "applies to services generally provided by governmental units such as police and fire protection or garbage collection." *Southend Neighborhood Imp. Ass'n v. St. Clair Cnty.*, 743 F.2d 1207, 1210 (7th Cir. 1984) (maintenance of county-owned neighborhood property is not a "service"); *see also Laramore v.*

9

*Illinois Sports Facilities Auth.*, 722 F.Supp. 443, 452 (N.D. Ill. 1989) (stadium site selection is not the provision of a "service"). And although most of these courts dealt with the meaning of "services" in the context of 42 U.S.C. § 3604(b), "the term has the same meaning in § 3604(f)(2) because the relevant language is materially the same." *Virginia*, 655 F.3d at 350; *compare* 42 U.S.C. § 3604(b) *with* 42 U.S.C. § 3604(f)(2); *see also Smith v. Pac. Prop. and Dev. Corp.*, 358 F.3d 1097, 1103 (9th Cir. 2004) (concluding that the language of § 3604(f)(2), which governs discrimination based on handicap, is otherwise materially identical to § 3604(b), which governs discrimination based on race, color, religion, sex, familial status, or national origin). Again, it also appears that HUD interprets "services" to mean municipal services and property and hazard insurance. *See* 24 C.F.R. § 100.70(b), (d).

In sum, Adler does not provide any legal authority supporting his contention that servicing a mortgage originated by another party is a "service" under § 3604(f)(2). Adler would nevertheless have me conclude that the term includes this activity. Absent supporting authority, and in light of the law militating against that conclusion, I decline. Adler therefore fails to state a claim under § 3604(f)(2). Accordingly, I grant this portion of American's second motion.

### *B. The Rehabilitation Act Claim*

Adler's second claim is that American violated Section 504 of the Rehabilitation Act by failing to modify its correspondence to him regarding the HAMP program pursuant to this request. He alleges that this denied him equal access to information related to HAMP.

Section 504 of the Rehabilitation Act provides the following:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal

> financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). To establish a prima facie claim under § 504, Adler must demonstrate that "(1) [he] is handicapped under the Act; (2) [he] is otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against [him]." *Barber v. Colorado*, 562 F.3d 1222, 1228 (10th Cir. 2009). American contends that Adler has not sufficiently pled the second and fourth elements of the prima facie case.

I turn to the face of Adler's amended complaint and look for allegations that he was qualified for HAMP. HAMP has eligibility requirements, and even an eligible mortgage is not automatically entitled to modification under the program. *See, e.g., Boyd v. U.S. Bank*, 787 F.Supp.2d 747, 753 (N.D. Ill. 2011) ("Defendants are correct that HAMP does not automatically entitle eligible borrowers to loan modifications."), *Hart v. Countrywide Home Loan, Inc.*, 735 F.Supp.2d 741, 747 (E.D. Mich. 2010) ("[E]ven if the Court assumes that Plaintiff's mortgage was eligible for modification under [HAMP], Plaintiff's claims fail because Plaintiff misconstrues [HAMP]. [HAMP] do[es] not impose a duty on Defendant to modify every eligible mortgage and thus, even if Plaintiff had been eligible for loan modification, her claims still fail."). Even though this by itself would not be enough, the complaint fails to generally allege that he was qualified for HAMP. *See.* Compl., Docket #19*; see also Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusion or a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted). More importantly, assuming, *arguendo,* it did so allege, the complaint is nevertheless bereft of the necessary further factual enhancement in support thereof. *See* Compl., Docket #19*;see also Iqbal*, 556 U.S. at 678. Thus, Adler fails to make a prima facie claim under § 504. Because I conclude that

Adler does not sufficiently allege the second element of the prima facie case, I need not address the fourth element. Accordingly, I grant this portion of American's second motion.

### *C. The ADA Claim*

Adler's third claim is that American discriminated against him in violation of the ADA by denying him full and equal enjoyment of its website because of the site's font, style, colors and scheme. In response to the motion, Adler concedes that he does not state a cause of action under the ADA. Accordingly, I grant this portion of American's second motion.

### IV. Conclusion

For the foregoing reasons, IT IS ORDERED that Defendant American's Motion to Dismiss **[Doc #7]** is DENIED as moot, and its Motion to Dismiss Amended Complaint **[Doc #24]** is GRANTED.

Date: June   28  , 2012 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE